J.M.R., Appellant,

v.

A.M., Appellee.

No. 2–84–120–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 17, 1985.

Joe Shannon, Jr., Fort Worth (on appeal only), for appellant.

Law Offices of James C. Barber, Joe K. Crews, Dallas, for appellee.

Charles M. Noteboom, Bedford, attorney ad litem.

Before JORDAN, JOE SPURLOCK, II and GRAY, JJ.

## OPINION

JORDAN, Justice.

Appellee, at all pertinent times a resident of the State of New York, brought this action against appellant, a resident of Tarrant County, Texas, to establish the parent-child relationship between her son, now five years old, and appellant. This suit also asks for conservatorship and for support for the child. Appellant's plea to the jurisdiction of the court was overruled and the case was tried to the court without a jury. A judgment was entered establishing the parent-child relationship, appointing a managing conservator, ordering child support and awarding attorney's fees. From this judgment appeal is taken based on six points of error. Initials will be used to protect the identity of the child.

We affirm.

■ Appellant's first point of error contends that the trial court erred in overruling his plea to the jurisdiction of the trial court. There was no request for findings of fact and conclusions of law and none were filed. In such a case, all facts are to be found in favor of the judgment, which must be affirmed on appeal if it can be upheld on any legal theory finding support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977); *Holly v. Cannady*, 669 S.W.2d 381, 382 (Tex.Civ.App.—Dallas 1984, no writ).

■ These implied findings may be challenged by "no evidence" and "insufficient evidence" points and where such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). It is unclear whether appellant is contending there is "no evidence" or "insufficient evidence" to support the trial court's action in overruling appellant's plea to the jurisdiction; accordingly, we will discuss both points on appeal.

■ In deciding a "no evidence" point, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Stedman v. Georgetown Savings and Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). If there is any evidence of probative force to support the challenged finding, then it must be upheld. *Id.*

■ Where the challenge to a finding is framed as an "insufficient evidence point," we are to consider all the evidence, both that in support of and contrary to the challenged finding, to determine if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,*

150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *City of Lubbock v. South Plains Electric Cooperative, Inc.*, 593 S.W.2d 138, 143 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

■ Where the implied findings of fact are supported by the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case. *Lassiter*, 559 S.W.2d at 358; *Ellis v. Waldrop*, 627 S.W.2d 791 (Tex.App. —Fort Worth 1982); *rev'd on other grounds*, 656 S.W.2d 902 (Tex.1983). This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939); *Rheiner v. Varner*, 627 S.W.2d 459, 462 (Tex.App.—Tyler 1981, no writ).

■ A.M., mother of the child whose interest is at stake in this lawsuit, was at the time this action was filed in 1982, a resident of the State of New York. J.M.R., appellant, was at that time a professional baseball player with the Texas Rangers of the American League and was a resident of Tarrant County, Texas. M.A.R., the child involved in this paternity action was born to appellee in New York City on November 4, 1979. A.M. filed two actions to establish paternity and to require J.M.R. to pay child support in New York, New York. Both actions were dismissed for lack of personal jurisdiction over J.M.R.

A.M. then filed this action in a district court of Tarrant County, Texas on September 29, 1982, and J.M.R. promptly filed a plea to the jurisdiction of the court. After a hearing on this plea the trial court on April 12, 1983 overruled J.M.R.'s plea to the jurisdiction.

When the court assumed jurisdiction in April of 1983, jurisdiction of a suit affecting the parent-child relationship, including paternity, was governed by Act of February 14, 1979, ch. 584, sec. 2, 1979 Tex.Gen. Laws, 1202, 1202 (hereinafter referred to as TEX.FAM.CODE ANN. sec. 11.045), *repealed by* Act of May 20, 1983, ch. 160, sec. 10, 1983 Tex.Gen.Laws 691, 709. However,

effective September 1, 1983, this section was repealed by the legislature and the Uniform Child Custody Jurisdiction Act was adopted. TEX.FAM.CODE ANN. sec. 11.51–11.75 (Vernon Supp.1984). We point out that while sec. 11.045 referred to suits affecting the "parent-child relationship," sec. 11.51 et seq. refers to "child custody matters." *Compare* sec. 11.045 *with* sec. 11.51–11.75. TEX.FAM.CODE ANN. sec. 11.53 (Vernon Supp.1984), dealing with jurisdiction, is otherwise substantially the same as repealed sec. 11.045. *Compare* sec. 11.53 *with* sec. 11.045.

Appellee relies upon two provisions of sec. 11.045 to establish jurisdiction in this action, TEX.FAM.CODE ANN. sec. 11.-045(a)(2)(A) and (C) which provide in pertinent part:

(a) A court has original jurisdiction of a suit affecting the parent-child relationship, whether or not the child is physically present in the state, only if one of the following conditions is met:

&ast; &ast; &ast; &ast; &ast; &ast;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because:

(A) the child ... and at least one contestant have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

&ast; &ast; &ast; &ast; &ast; &ast;

(C) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with this section....

*Id.*

Repealed sec. 11.045 is similar to sec. 3 of the Uniform Child Custody Jurisdiction Act and to sec. 11.51 et seq., Texas Family Code. However, sec. 11.045 is broader than either sec. 3 of the Uniform Child Custody Jurisdiction Act or new secs. 11.51 and 11.53, because sec. 11.045 specifically included any suit "affecting the parent-child relationship," clearly including pater-

nity actions, while secs. 11.51 and 11.53 by their express terms relate to "child custody matters." *Compare* sec. 11.045 *with* sec. 3 *and* sec. 11.51 *and* sec. 11.53. The State of New York has adopted the Uniform Child Custody Jurisdiction Act, N.Y.DOM. REL.LAW sec. 75–d (McKinney Supp.1984–85). This section is similar to Texas Family Code sec. 11.53 which confers jurisdiction in child custody determinations. *Compare* sec. 75–d *with* sec. 11.53. Again, however, the New York law deals with child custody determinations, and is thus not as broad as repealed sec. 11.045, which was the jurisdictional provision governing jurisdiction in this case at the time the matter was heard by the trial court. *Compare* sec. 75–d *with* sec. 11.045.

Subject matter jurisdiction in New York is conferred by sec. 511 of the Family Code Act, N.Y. FAMILY COURT ACT sec. 511 (McKinney 1983). For in personam jurisdiction, it requires personal service. *Id.* New York's Long Arm Statute is found in sec. 302 of McKinney's Civil Practice Law and Rules and provides for personal jurisdiction over acts by non-domiciliaries of New York only in specified and limited areas. N.Y.CIV.PRAC.LAW sec. 302 (McKinney 1972 and Supp.1984–85). While the New York Long Arm Statute was amended effective September 1, 1982, to embrace defendants in "matrimonial actions or family court proceedings," the Act as amended does not specifically include actions to establish the parent-child relationship. *Id.* Accordingly, it is still somewhat doubtful whether the State of New York could entertain this paternity action in the future unless they acquired personal jurisdiction over the appellant.

J.M.R. relies exclusively on the case of *Albers v. Ames,* 616 S.W.2d 653 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ) to support his contention that the courts of Texas do not have jurisdiction to entertain paternity actions against a resident of the State of Texas. While we concede that the facts in *Albers* are similar to the facts in *this* case, we think there are distinctions between the two, and we therefore refuse to follow *Albers* in this particular case.

Albers, a resident of Colorado, brought a paternity action in that state against Ames, a resident of Texas. *Id.* at 654. The Colorado court dismissed for lack of jurisdiction over the nonresident father and the mother subsequently sued for the same relief in Texas. *Id.* The court sustained the plea to the jurisdiction and the mother appealed. *Id.* The Houston Court of Civil Appeals examined former sec. 11.045, Texas Family Code, which set forth the jurisdictional requirements for a suit affecting the parent-child relationship. *Id.* at 654–55. The court in *Albers* said Colorado has adopted COLO.REV.STAT. title 4, sec. 14–13–104 (1973), pointing out that it had been modeled after the Uniform Child Custody Jurisdiction Act and therefore *it conclusively appears* the State of Colorado would have jurisdiction over this case (sec. 11.-045(a)(2)(C)). *Id.* at 655. (Emphasis ours.) The court also pointed out that the Colorado court's decision in dismissing *Albers'* 1975 paternity suit was based on the court's lack of jurisdiction over the alleged father as he was a nonresident of that state and there was no available authority at that time to obtain jurisdiction over the non-resident father. *Id.* The court also said that Colorado has now adopted the Uniform Child Jurisdiction Act and has enacted other relevant statutes which grant the Colorado courts jurisdiction over this paternity suit and over the alleged father. *Id.*

In this case, unlike *Albers,* it does not "conclusively appear" from the record that the State of New York would have jurisdiction in this case. As pointed out heretofore, the amended New York Long Arm Statute does not specifically mention defendants in paternity cases, and there is accordingly some question as to whether the New York courts could still obtain jurisdiction over this appellant. The question of personal jurisdiction of the New York courts over this appellant in a paternity action is not nearly as clear as the Houston court in *Albers* found that situation to be in Colorado.

■ Therefore, because in this case it is not shown that the New York statutes in question are adequate to provide subject matter and personal jurisdiction and where such facts do not *"appear conclusively"* of record, we hold that *Albers* is distinguishable from this case and should not be followed. It is submitted that the district court of Tarrant County, a constitutional court established by the legislature pursuant to TEX.CONST. art. V, sec. 1 has in personam jurisdiction over its residents. We cannot see how the legislature can limit the constitutional authority granted to district courts, and the legislature in the enactment of statutes cannot be charged with the intent to limit constitutional jurisdiction. Suit to establish paternity and support is a suit in personam, is transitory in nature, and may be maintained wherever a defendant is found. *Conlon v. Heckler*, 719 F.2d 788, 797 (5th Cir.1983). The trial court had inviolate jurisdiction of this cause without reference to any legislative act. Residence in a state is a valid basis for the exercise of in personam jurisdiction. *Bulova Watch Company v. Steele*, 194 F.2d 567, 571 (5th Cir.), *aff'd*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952).

Jurisdiction of this paternity action must and does lie somewhere. It is past time to stop batting this legal ball all over the country; it is time to let it land in some court's glove. Appellee has been battered from pillar to post and to and from various courts since the birth of her child, M.A.R., more than five years ago. After two unsuccessful attempts in her home state to establish paternity and receive child support, she was frustrated and then came to the father's own state. To now say that a district court in Texas does not have jurisdiction over a Texas resident in a suit of this nature is to us ludicrous and we cannot say that. It is time to establish the identity of the father of this child, M.A.R., and to have that father ordered to pay reasonable child support for the child's maintenance. Appellant's first point of error is overruled.

■ In point of error two, appellant complains of the failure of the trial court to require the joinder of the child, M.A.R., as a party to the suit. He says that such joinder is required by TEX.R.CIV.P. 39. Appellant raised no objection at trial to the failure to name the child as a party personally, nor did he file a sworn plea alleging this defect in accordance with TEX.R. CIV.P. 93. *See Jackson v. Thompson*, 610 S.W.2d 519, 522 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). Appellant contends that the child is an indispensable party to these proceedings and that failure to join an indispensable party is fundamental error and may be raised for the first time on appeal. We disagree.

We do not find any provision of the Texas Family Code which requires that a child be joined as a party to any proceeding thereunder, except TEX.FAM.CODE ANN. sec. 13.07 (Vernon Supp.1984) which requires that a child must be a party to a settlement agreement. However, that section specifies that a child shall be represented as a party by a guardian ad litem appointed by the court. While not specifically named personally as a party to this action, the child, M.A.R., was a party through his ad litem, attorney Charles M. Noteboom, who was appointed as ad litem by the court prior to trial. The ad litem represented M.A.R. all during the trial, in pretrial hearings, and has filed a very capable brief on this appeal. *See Pleasant Hills Children's Home, Etc. v. Nida*, 596 S.W.2d 947, 951 (Tex.Civ.App.—Fort Worth 1980, no writ); *Peterson v. Peterson*, 502 S.W.2d 178, 179 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ).

In *Peterson* the court after pointing out an appearance was filed on behalf of the children in a custody case by the ad litem, said that the district court was empowered on its own motion, to make the children parties to the proceedings if it determined, in its discretion, that it was just and proper to do so. *Peterson*, 502 S.W.2d at 179. *See also Durham v. Barrow*, 600 S.W.2d 756 (Tex.1980), where it was held that a young child who was the subject of an adoption action was not a necessary party to the suit. *Id.* at 761. The court appar-

ently made this determination because of the adoption statute which, like the paternity statute, does not require service on or notice to that child.

We hold, therefore, that in the first place it was not strictly necessary to name this child personally as a party to the lawsuit, and if it were, that he was a party by and through the appointment of his able guardian ad litem. Appellant's point of error two is overruled.

J.M.R. next argues, in point of error three that it was error for the trial court to admit into evidence at trial the transcribed testimony at a pretrial hearing held a week before from the witness Sally Williams. Sally Williams was a serologist, appointed by the court pursuant to TEX. FAM.CODE ANN. sec. 13.01–13.09 (Vernon Supp.1984) to perform blood tests upon J.M.R., A.M. and M.A.R., the parents and the child involved in this case. The court conducted a pretrial hearing at which the serologist testified, in accordance with the requirements of sec. 13.04 of the Family Code. This hearing was held on November 4, 1983, just one week before trial on the merits was conducted. Sally Williams testified fully, both on direct and on cross-examination, and concluded that J.M.R. cannot be excluded as the biological father of M.A.R.

Appellant argues that TEX.R.EVID. 804(b)(1) permits the introduction of testimony or of a deposition in another proceeding only if the declarant is unavailable as a witness, and says that it was not shown here that Sally Williams was unavailable as a witness.

Section 13.04(c), Texas Family Code, provides that "[a]ll evidence presented at the pretrial conference is a part of the record of the case." *Id.* Thus, whether or not appellee's exhibit number five, the transcript of Sally Williams' pretrial testimony, was admitted, the evidence was a part of the record before the court. We think that under the circumstances of this case it was *discretionary* with the trial court whether to admit the pretrial testimony of the witness Sally Williams, at which all parties

were present and had ample opportunity to examine and cross-examine.

Moreover, if there was any error in the admission of appellee's exhibit number five the error was harmless, for the reason that the critical elements of Sally Williams' testimony, found in plaintiff's exhibit number five, were admitted during the trial as part of the ad litem's case. Pretrial testimony of the serologist as to the testing of the blood of the parents and the child and her conclusion that J.M.R. could not be ruled out as the biological father of the child, was introduced at trial. In fact, when this evidence was offered by the ad litem during trial, an objection was made by counsel for appellant that the testimony of Sally Williams should not be read into evidence by the ad litem because it had already been admitted and that would be the best evidence. That objection was made on two different occasions to the admission of the testimony of the witness, Sally Williams. There was no harm shown even if the admission of the original testimony of Williams was improper.

Moreover, even if the admission of the pretrial testimony of the witness, Sally Williams, be considered erroneous, it is harmless error for the additional reason that there was more than ample evidence in the record, from the testimony of appellee and from photographic evidence of all three parties to this case, to support the trial court's finding that J.M.R. was the biological father of M.A.R. Appellant's point of error three is overruled.

Appellant's point of error four claims that the report of the blood testing should not have been admitted because there was no showing that it was the blood of the child, M.A.R., which was tested. Appellant argues that because Mrs. Williams did not specifically point out or identify the child, M.A.R., as the one whose blood was tested, her testimony concerning the testing of M.A.R.'s blood should have been excluded. Appellant says that because she did personally identify J.M.R. and A.M. in the courtroom, she should have

also identified the child, M.A.R., as the third person whose blood was tested. Of course, this was impossible, because the child was not present during trial.

There is simply no merit in this argument. Mrs. Williams did say that on certain dates she took blood samples from J.M.R., A.M. and the child, M.A.R. Williams personally identified the child from whom she drew the blood sample upon which she conducted her test as M.A.R. born in November, 1979. A.M., appellee, testified that the last time appellant had visited with the child was when she and the child were in the area for the blood tests.

The objection to the admission of the testimony concerning the sampling and testing of the child's blood went to the weight of the evidence and not to its admissibility. Appellant's point of error four is overruled.

 In point of error five appellant says that the trial court abused its discretion in setting the amount of child support to be paid by appellant at $1,100.00 per month. Point of error six complains that there was insufficient evidence of the needs of the child to justify such an award of child support. We shall consider these points together.

Since there were no findings of fact or conclusions of law requested by appellant, or filed by the court, all facts, as we have previously noted, must be presumed to support the judgment. The record shows that J.M.R., a professional baseball player, earned for the years 1981 through 1984 the gross amount of $1,325,000.00, including a $200,000.00 signing bonus in 1981. For the years 1983 and 1984 he made $450,000.00 each. Although his child, M.A.R., is now five years old, not one penny of these incredible earnings have been given to A.M. for the benefit of M.A.R. There is also evidence that although he is nearing the end of his career, and will not be making this amount of money much longer, he will be paid a minimum of $80,000.00 per year for ten years beginning in 1986.

Since there is ample evidence of the five-year-old child's needs, and of the mother's needs for benefit of the child, we think the amount of child support set by the court, under all these facts, was well within reason and within proper bounds. The amount set certainly did not represent an abuse of discretion. Appellant's points of error five and six are overruled.

The judgment is affirmed.